IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 9, 2017 Session

## CINDY PHILLIPS, ET AL. v. RURAL METRO OF TENNESSEE, L.P., ET AL.

### Appeal from the Circuit Court for Loudon County
No. 2015-cv-95     Michael S. Pemberton, Judge

_____

### No. E2016-02440-COA-R9-CV

_____

We granted an interlocutory appeal pursuant to Tenn. R. App. P. 9 in this case to consider whether the allegations set forth in the Complaint make this a 'health care liability action' as defined by Tenn. Code Ann. § 29-26-101 *et seq.* ("the Tennessee Health Care Liability Act") such that the pre-suit notice and certification requirements set forth in Tenn. Code Ann. §§ 29-26-121 and − 122 are applicable.  We find and hold that the allegations set forth in the Complaint filed in this case do not make this suit a health care liability action as defined by the Tennessee Health Care Liability Act.  We affirm that portion of the judgment of the Circuit Court for Loudon County ("the Trial Court") finding and holding that the allegations set forth in the Complaint filed in this case do not make this suit a health care liability action as defined by the Tennessee Health Care Liability Act.[1]

### Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed, in part; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and JOHN W. MCCLARTY, JJ., joined.

P. Edward Pratt and Andrew J. Droke, Knoxville, Tennessee for the appellants, Rural Metro of Tennessee, L.P.; Rural Metro Corporation; and R/M of Tennessee G.P., Inc.

Stephen Marcum, Huntsville, Tennessee, for the appellant, Johnathan Moore.

Jeffrey H. Glaspie and Gary L. Adkins, Knoxville, Tennessee, for the appellees, Cindy Phillips and Hobart Phillips.

_____

[1] We do not address in this Opinion any of the other grounds ruled upon by the Trial Court in its order on the motions to dismiss.

## OPINION

## Background

On July 29, 2014, Charles Ray Phillips ("Deceased") was killed in a motor vehicle accident in Loudon County, Tennessee.[2]  Deceased suffered severe, extensive burns in the accident.  Authorities at the accident site placed a call to Loudon County ambulance service and a Rural Metro ambulance responded.  After arriving at the scene of the accident and seeing the condition of Deceased's body, the ambulance employees refused to transport Deceased's remains to a hospital.  Allegedly, one of the ambulance employees stated he did not want Deceased to "stink up the ambulance."  Deceased's body remained by the roadside until an out-of-county ambulance could be summoned to transport Deceased's body.  Local media reported the story including the comment about stinking up the ambulance.

Deceased's parents, Cindy Phillips and Hobart Phillips ("Plaintiffs"), sued Rural Metro of Tennessee, L.P.; Rural Metro Corporation; and R/M of Tennessee G.P., Inc. (collectively "Rural Metro"), Johnathan Moore ("Moore"), and John Doe I & II alleging intentional infliction of emotional distress.  In their Complaint, Plaintiffs allege: "The conduct of the defendants in this cause of action greatly magnified their grief and distress in a manner that is nearly incomprehensible.  In addition to the loss of a child, they were reminded regularly in the news that [Deceased] was left by the roadway so as to not 'stink up the ambulance.'"

Rural Metro and Moore filed motions to dismiss alleging, among other things, that this suit was one for health care liability and that the failure to file a pre-suit notice and a certificate of good faith pursuant to Tenn. Code Ann. §§ 29-26-121 and -122 was fatal to the action.  The Trial Court denied the motion finding, in part, that this is not a health care liability action[3].  The Trial Court then granted Rural Metro and Moore permission to file for an interlocutory appeal.  By order entered February 17, 2017, we granted the application for an interlocutory appeal.

## Discussion

Per our Order dated February 17, 2017, we granted this Rule 9 solely to consider: "whether the allegations set forth in the Complaint make this a 'health care liability action' as defined by the Tennessee Health Care Liability Act such that the pre-suit notice

---

[2] For purposes of this appeal, the "facts" are taken from the allegations contained in the complaint.

[3] As noted in footnote 1, other grounds were raised and were decided by the Trial Court.  We, however, will consider only that issue upon which we granted the application for a Tenn. R. App. P. 9 interlocutory appeal.

2

and certification requirements set forth in Tennessee Code Annotated sections 29-26-121 and – 122 were applicable."[4]

In pertinent part, the Trial Court denied the motions to dismiss after finding and holding that the allegations set forth in the Complaint did not make this suit a health care liability action subject to the Tennessee Health Care Liability Act. As our Supreme Court has instructed:

> A motion to dismiss a complaint for failure to state a claim for which relief may be granted tests the legal sufficiency of the plaintiff's complaint. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894 (Tenn. 2011); *cf. Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 406 (Tenn. 2002). The motion requires the court to review the complaint alone. *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 700 (Tenn. 2009). Dismissal under Tenn. R. Civ. P. 12.02(6) is warranted only when the alleged facts will not entitle the plaintiff to relief, *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011), or when the complaint is totally lacking in clarity and specificity, *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992) (*citing Smith v. Lincoln Brass Works, Inc.*, 712 S.W.2d 470, 471 (Tenn. 1986)).
>
> A Tenn. R. Civ. P. 12.02(6) motion admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from these facts. *Brown v. Tennessee Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010); *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d at 700. Accordingly, in reviewing a trial court's dismissal of a complaint under Tenn. R. Civ. P. 12.02(6), we must construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true, *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d at 894; *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d at 426; Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 5-6(g), at 5-111 (3d ed. 2009). We review the trial court's legal conclusions regarding the adequacy of the complaint de novo without a presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d at 895; *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d at 700.

*SNPCO, Inc. v. City of Jefferson City*, 363 S.W.3d 467, 472 (Tenn. 2012).

---

[4] Appellants Rural Metro of Tennessee, L.P.; Rural Metro Corporation; R/M of Tennessee G.P., Inc.; and Johnathan Moore attempt to raise other issues in their brief on appeal. We decline to consider these other issues in this Rule 9 appeal.

With regard to the Tennessee Health Care Liability Act, our Supreme Court has instructed:

> Tennessee Code Annotated section 29–26–101(a)(1) defines health care liability action as "any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." Furthermore subsection 101(a)(2) defines a health care provider as "[a] health care practitioner licensed, authorized, certified, registered, or regulated under any chapter of title 63 or title 68. . . ." Finally, subsection 101(c) makes "[a]ny such civil action or claim [ ] subject to this part regardless of any other claims, causes of action, or theories of liability alleged in the complaint."
>
> Giving every word in this section its full effect and plain meaning, we hold that section 29–26–101 establishes a clear legislative intent that *all* civil actions alleging that a covered health care provider or providers have caused an injury related to the provision of, or failure to provide health care services be subject to the pre-suit notice and certificate of good faith requirements, regardless of any other claims, causes of action, or theories of liability alleged in the complaint.

*Ellithorpe v. Weismark*, 479 S.W.3d 818, 827 (Tenn. 2015) (emphasis in original). Thus, for an action to be considered a health care liability action: (1) a health care provider, (2) must have caused an injury, (3) related to the provision of, or failure to provide, health care services to a person.

Ambulances and emergency medical services personnel are "licensed, authorized, certified, registered, or regulated . . ." under title 68 of the Tennessee Code. Tenn. Code Ann. § 29-26-101(a)(2) (2012); s*ee* Tenn. Code Ann. § 68-140-302 (2013) (containing definitions for 'ambulance,' and 'emergency medical services personnel'). Thus, the defendants to this suit qualify as health care providers for purposes of Tenn. Code Ann. § 29-26-101.

Assuming injury occurred as a result of the failure to transport Deceased and/or the statement made about stinking up the ambulance, the real question at issue becomes whether the defendants were providing or failing to provide health care services to a person. Health care services are defined in Tenn. Code Ann. § 29-26-101 as:

Health care services to persons includes care by health care providers, which includes care by physicians, nurses, licensed practical nurses,

pharmacists, pharmacy interns or pharmacy technicians under the supervision of a pharmacist, orderlies, certified nursing assistants, advance practice nurses, physician assistants, nursing technicians and other agents, employees and representatives of the provider, and also includes staffing, custodial or basic care, positioning, hydration and similar patient services.

Tenn. Code Ann. § 29-26-101(b) (2012).

The Trial Court found that transporting Deceased's remains could not constitute providing health care services to a person because Deceased was not a viable person at the time that the defendants refused to transport. We must decide whether the ambulance employees failed to provide health care services to a person when they refused to transport Deceased's body in the ambulance. The issue of whether a dead body constitutes a person for purposes of determining whether a claim is one for health care liability is an issue of first impression in Tennessee.

In their brief on appeal, Rural Metro and Moore argue that the only reason they were on the scene of the accident was "to provide emergency medical and transport services," and, thus, they were providing health care services. They then advance two arguments with regard to the question of whether they failed to provide health care services to a person. First, Rural Metro and Moore argue that Plaintiffs, as Deceased's parents, constitute persons for purposes of Tenn. Code Ann. § 29-26-101. This argument is disingenuous and convoluted as a 'person' pursuant to the statute, constitutes the one to whom the health care services are being provided or denied. This would be opposed to, for instance, health care provided to an animal. While Plaintiffs are indeed persons, the defendants were in no way providing, or failing to provide, health care services to Plaintiffs.

In the alternative, Rural Metro and Moore argue that Deceased, despite no longer being viable, still constituted a person for purposes of the definition of a health care liability action. They assert that despite being 'clearly' dead at the accident scene, Deceased had not yet legally been declared dead. The implication is that because he had not legally been declared dead, Deceased at that time still was considered a person even though he was 'clearly' dead.

Plaintiffs, on the other hand, argue in their brief on appeal that the defendants were not providing health care services to a person because Deceased "was obviously, and undeniably, deceased at the time the offending conduct occurred." Thus, they argue that Deceased cannot be considered a person for purposes of considering whether health care services were rendered or denied. Plaintiffs point out that other states have decided the issue now before us in a manner that would be favorable to their position. *See Bell v.*

5

*Indian River Mem. Hosp.*, 778 So.2d 1030, 1034 (Fla. Dist. Ct. App. 2001) (holding that disposal of a corpse "does not constitute medical malpractice . . . ."); *Bauer v. North Fulton Med. Cntr., Inc.*, 527 S.E.2d 240, 242 (Ga. Ct. App. 1999) (stating that the Georgia medical malpractice statute "governs medical procedures and services offered to living patients . . .," and therefore, was not applicable to a case involving a corpse); *Salazar v. Dickey*, No. 04-08-00022-CV, 2010 WL 307852, at *4 (Tex. App. Jan. 27, 2010) (holding stated claims were not health care liability claims because the plaintiff's "father was already dead at the time [the doctor] allegedly departed from acceptable standards and practices, [and, thus, the plaintiff's] father could not be a 'patient.'  Nor could his father have received medical, care, treatment, or confinement after his death." (footnote omitted)); *Hare v. Graham*, No. 2-07-118-CV, 2007 WL 3037708, at *3 (Tex. App. Oct. 18, 2007) (holding that claim was not one for health care liability "as the idea that a cadaver can be a 'patient' is, on its face, illogical.  As such, we hold that a dead body is not a patient and conclude that a body does not receive 'medical care, treatment, or confinement' after death.").  *But see Christus Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 536 (Tex. 2016) (distinguishing *Salazar v. Dickey* and *Hare v. Graham* and holding that post-mortem fraud claim was one for health care liability because the claim was "directly related to acts or treatments [the plaintiffs] alleged were improperly performed or furnished, or that should have been performed or furnished, [prior to the patient's death and] during his treatment and confinement.").

We note that although Deceased had not legally been declared dead at the time that the ambulance employees refused to transport, the parties agree that Deceased clearly was dead and that there was no question that rendering any health care services could have done anything whatsoever to prolong Deceased's life.  The situation would have been very different if at the time that the ambulance employees arrived at the accident scene there had been any question that rendering health care to Deceased could have prolonged his life.  In such a situation, the ambulance employees surely would have taken steps, including transporting him, to prolong Deceased's life thereby clearly rendering health care services to a person.  There is no dispute in this case that all of the alleged offensive conduct occurred after Deceased had died.  In fact, there is no dispute that the ambulance employees did not even arrive at the accident scene until after Deceased had died.

We agree with the position that a dead body cannot be a patient to whom health care services can be rendered.  By their very nature, health care services are designed to prolong, continue, or enhance life, and a dead body is, obviously, not alive.  As such, a body simply cannot be a patient after death has occurred.  Therefore, actions taken or refused with regard to a dead body cannot constitute rendering or failing to render health care services to a person for purposes of the Tennessee Health Care Liability Act.  Given all this, we affirm that portion of the Trial Court's judgment holding that the allegations

6

set forth in the Complaint filed in this case do not make this suit a health care liability action as defined by the Tennessee Health Care Liability Act.

## Conclusion

The judgment of the Trial Court is affirmed with regard to the judgment that the allegations set forth in the Complaint do not make this suit a health care liability action as defined by the Tennessee Health Care Liability Act, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the appellants, Rural Metro of Tennessee, L.P.; Rural Metro Corporation; and R/M of Tennessee G.P., Inc.; and Johnathan Moore; and their sureties.

_____
D. MICHAEL SWINEY, CHIEF JUDGE